IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PETER POE, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>GENTNER DRUMMOND, et al.,<br><br>    *Defendants*. | Case No. 23-cv-00177-JFH-SH |

**PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND FOR A PROTECTIVE ORDER AND OPENING BRIEF IN SUPPORT**

Plaintiffs Benjamin Boe, Bethany Boe, and Brandon Boe (the "Boe Family"); Plaintiffs Donna Doe and Daphne Doe (the "Doe Family"); Plaintiffs Lauren Loe and Lydia Loe (the "Loe Family"); Plaintiffs Paula Poe, Patrick Poe, and Peter Poe (the "Poe Family"); and Plaintiffs Rachel Roe, Richard Roe, and Ryan Roe (the "Roe Family"), by and through their undersigned counsel, pursuant to Federal Rules of Civil Procedure 5.2 and 26(c), respectfully move this Court for an order granting them leave to proceed under pseudonyms and protective order limiting disclosure of their identities to counsel for Defendants.

Under Federal Rule of Civil Procedure 5.2(a), Plaintiffs Brandon Boe, Daphne Doe, Lydia Loe, Peter Poe, and Ryan Roe (the "Minor Plaintiffs") are entitled to proceed under initials because they are minors. However, they seek to proceed under pseudonyms to further protect their identities. Plaintiffs Benjamin and Bethany Boe, Donna Doe, Lauren Loe, Paula and Patrick Poe, and Rachel and Richard Roe (the "Parent Plaintiffs") seek to proceed under pseudonyms to protect the identity of the Minor Plaintiffs. The identification of the Parent Plaintiffs by their legal names would erase the protection of confidentiality to which the Minor Plaintiffs are entitled because

they readily would be identifiable by the names of their parents. Proceeding under pseudonyms is further necessary to protect the Minor Plaintiffs and their families from undue harassment, discrimination, and violence because of the Minor Plaintiffs' transgender status and because the Parent Plaintiffs are affirming parents of transgender adolescents.[1]

Because the privacy rights of the Minor Plaintiffs outweigh the presumption of openness in federal courts, the Minor Plaintiffs and the Parent Plaintiffs should be allowed to proceed under pseudonyms.

Plaintiffs respectfully submit the following brief in support of their motion.

## INTRODUCTION

Brandon Boe, Daphne Doe, Lydia Loe, Peter Poe, and Ryan Roe are transgender minors in Oklahoma who want to live authentically as who they are without fear of discrimination, harassment, or violence. Plaintiffs have filed a complaint challenging the recently enacted discriminatory and unconstitutional law—Oklahoma Senate Bill 613—that endangers the health and wellbeing of transgender adolescents in Oklahoma by prohibiting the provision of essential and medically necessary care for adolescents with gender dysphoria (the "Health Care Ban" or "Ban"). Plaintiffs Brandon Boe, Daphne Doe, Lydia Loe, and Peter Poe, along with their parents and guardians, also challenge the discriminatory and unconstitutional policy of Defendants University Hospitals Authority, University Hospitals Trust, and OU Medicine, Inc. d/b/a OU Health (together, the "Hospital Defendants") to cease providing gender-affirming services to transgender patients under the age of eighteen.

---

[1] To protect their privacy pending consideration of this motion, in their Complaint and this motion, Plaintiffs have used the pseudonyms for which they seek leave to use in this action. Should the Court deny this motion, Plaintiffs will consider dismissing their claims or amending their Complaint to use the names by which they are known.

The Minor Plaintiffs seek leave to proceed under pseudonyms (as opposed to initials) to protect their privacy and safety as minors and to avoid exposure to discrimination and harassment. The Parent Plaintiffs also seek to proceed under pseudonyms to further protect the identity of the Minor Plaintiffs. As transgender adolescents, the Minor Plaintiffs are members of a group subject to frequent discrimination, harassment, and violence because of their transgender status. Further, this case involves their highly private and confidential medical information. Disclosure of the identities of the Minor Plaintiffs likely would expose them to the same discrimination and harassment they are seeking to redress in this litigation.

Plaintiffs have no objection to providing their legal names to counsel for Defendants and the Court. Plaintiffs also do not intend to prevent the public from having access to the Court's rulings or observing the proceedings of this Court under adequate protections. They want only to prevent public disclosure of their identity.

Accordingly, Plaintiffs respectfully ask this Court for leave to proceed under pseudonyms to protect their identity from public disclosure and for a protective order limiting disclosure of their identities to counsel for Defendants.

**ARGUMENT**

In general, a complaint must state the names of all parties. *See* FED. R. CIV. P. 10(a). But "there may be exceptional circumstances warranting some form of anonymity in judicial proceedings." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). In particular, Rule 5.2 specifically recognizes the need to protect a minor's identity. *See* FED. R. CIV. P. 5.2(a)(3). The Tenth Circuit allows plaintiffs to proceed anonymously "where there are significant privacy interests or threats of physical harm implicated by the disclosure of the plaintiff's name." *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998) (quoting *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)). Although "identifying a plaintiff only by a pseudonym is

3

an unusual procedure," it is appropriate "where there is an important privacy interest to be recognized" and is "subject to a decision by the judge as to the need for the cloak of anonymity." *Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1288 (D. Kan. 2017) (quoting *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979)).[2]

To determine whether a plaintiff may proceed anonymously, the court may use "informed discretion" to weigh a plaintiff's right to privacy against the countervailing public interest in disclosure. *M.M.*, 139 F.3d at 803. Among other factors, courts consider: (1) whether the claims "involv[e] matters of a highly sensitive and personal nature," *Femedeer*, 227 F.3d at 1246 (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)); *M.M.*, 139 F.3d at 803; (2) whether the "injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," *M.M.*, 139 F.3d at 803 (quoting *Doe*, 951 F.2d at 324); or (3) whether identification creates a risk of "real danger of physical harm." *Id*. Each of these factors weighs heavily in favor of allowing Plaintiffs to proceed under pseudonyms. Other factors unique to the circumstances of this case, including the risk of bullying and harassment at school from other students and school administrators and the resulting emotional distress should Minor Plaintiffs be identified as transgender, or as plaintiffs in this lawsuit, further support granting leave for Plaintiffs to proceed anonymously.

In addition, Federal Rule of Civil Procedure 26(c) specifically permits the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

---

[2] The Supreme Court has implicitly endorsed the use of pseudonyms to protect plaintiffs' privacy. *See, e.g.*, *Honig v. Doe*, 484 U.S. 305 (1988) (suit by minor for violation of Education of the Handicapped Act); *Plyler v. Doe*, 457 U.S. 202 (1982) (suit by undocumented minors for violation of equal protection); *Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Poe v. Ullman*, 367 U.S. 497 (1961) (birth control). The Tenth Circuit has as well. *See, e.g.*, *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300 (10th Cir. 2020) (high school student suing under Title IX); *Doe v. Okla. City Univ.*, 406 F. App'x 248 (10th Cir. 2010) (student claiming disability discrimination).

4

or expense" upon motion of a party. The granting of a protective order under Rule 26(c) requires a showing of good cause by the movant, which Plaintiffs have shown here.

**I.    GRANTING PLAINTIFFS' REQUEST TO PROCEED UNDER PSEUDONYMS IS IN THE PUBLIC INTEREST AND WOULD CAUSE NO PREJUDICE TO DEFENDANTS.**

Rule 5.2(a) requires the use of initials in court filings to protect the identities of minors unless they affirmatively waive that protection. *See* FED. R. CIV. P. 5.2(a)(3), 5.2(h). Courts also may enter an order requiring the redaction of "additional information," including initials, upon a showing of "good cause." FED. R. CIV. P. 5.2(e). Recognizing the "heightened protection" appropriate for minor plaintiffs, *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004), courts frequently allow minor plaintiffs to proceed under pseudonyms. *Id.*; *see also Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of children"); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ("the youth" of plaintiffs is often "a significant factor in the matrix of considerations arguing for anonymity" and finding the plaintiffs' youth to be an "especially persuasive" factor justifying anonymity); *Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *5 (S.D. Cal. Dec. 20, 2017) ("'[C]hild-plaintiffs' are deemed to be especially vulnerable, warranting their anonymity.").

The Minor Plaintiffs are transgender minors. Given the highly detailed (albeit non-identifying) information in the Complaint about the Minor Plaintiffs, their families, and their medical histories, the use of pseudonyms is essential to protect their privacy. Because the pool of transgender adolescents receiving gender-affirming care is small, even initials could be used to identify Minor Plaintiffs. In a June 2022 Report, the Williams Institute on Sexual Orientation and

Gender Identity Law and Public Policy determined that roughly just 1.43% of the U.S. population aged 13 to 17 identified as transgender. In Oklahoma, it is estimated to be 1%.[3]

The parents and guardians of the Minor Plaintiffs also should be allowed to proceed using pseudonyms. Courts customarily allow both minors and their parents or guardians to proceed under pseudonyms where the interests of minors are at stake. *See Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 724 (7th Cir. 2011), *vacated on other grounds*, 687 F.3d 840 (7th Cir. 2012); *S.E.S. v. Galena Unified Sch. Dist. No. 499*, No. 18-2042-DDC-GEB, 2018 WL 3389878, at *2 (D. Kan. July 12, 2018) (permitting plaintiffs to proceed anonymously because the parents and child "share common privacy interests based on their inseparable relationship to one another" and "[o]rdering disclosure of the parents' identities would place—in effect—personally identifiable and confidential information about" the child "in the public record"); *Doe v. Banos*, 713 F. Supp. 2d 404, 407 (D. N.J. 2010) (stating that the pseudonym of father and daughter was "used to protect the identity of a 15-year-old minor."); *Stegall*, 653 F.2d at 186; *Porter*, 370 F.3d at 561.

Other courts have permitted transgender minors and their parents or guardians to use pseudonyms to protect their privacy. *See, e.g.*, *Doe v. United States*, No. 16-cv-0640-SMY-DGW, 2016 WL 3476313, at *1 (S.D. Ill. June 27, 2016) (allowing minor transgender plaintiff and his parents to proceed anonymously because of the social stigma associated with non-conforming gender identities). Indeed, courts regularly extend these protections to parents and guardians in cases involving transgender youth. *See, e.g.*, *Dekker v. Weida*, No. 4:22cv325-RH-MAF (N.D. Fla. Sept. 13, 2022), ECF No. 18; *Doe v. Volusia Cnty. Sch. Bd.*, No. 18-102 (M.D. Fla. Jan. 30, 2018),

---

[3] JODY HERMAN ET AL., WILLIAMS INST., HOW MANY ADULTS AND YOUTH IDENTIFY AS TRANSGENDER IN THE UNITED STATES? 9–10 (2022), https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Pop-Update-Jun-2022.pdf.

ECF No. 8; *Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-CV-524, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016); *Doe v. United States*, 2016 WL 3476313, at *1.

Identifying the Minor Plaintiffs' parents by name effectively would identify the Minor Plaintiffs themselves. Given that the Complaint challenges the discriminatory denial of necessary medical care and the effect of that denial, it necessarily pleads highly detailed information about the Plaintiff Families. Because of the relatively small number of transgender adolescents, the information in the Complaint could be used to identify the Minor Plaintiffs when combined with their parents' legal names.

Protecting constitutional rights is of the utmost public interest, and lawsuits seeking to vindicate those rights by definition serve the public. Plaintiffs seek to vindicate and protect their constitutional and statutory rights that apply to all persons in Oklahoma. Forcing an individual to disclose private and personal information as part of vindicating constitutional and statutory rights would dissuade other similarly situated individuals from bringing such claims. *Cf. Doe v. Stand. Ins. Co.*, No. 1:15–cv–00105–GZS, 2015 WL 5778566, at *3 (D. Me. Oct. 2, 2015) ("To deny Plaintiff's request under the circumstances of this case might not only prevent Plaintiff from proceeding on her claim, but might also discourage others ... from asserting their claims.").

Plaintiffs do not seek to restrict the public's general right to access the filings, proceedings, and rulings in this case. Plaintiffs' request is narrowly tailored to prevent only the public disclosure of the Minor Plaintiffs' identities and those of their parents and next friends. Where, as here, the "public will have access to the facts relevant to the parties' arguments and the Court's ultimate decision in the case, an order permitting Plaintiff[s] to proceed under a pseudonym will not unreasonably interfere with the public's interest in access to judicial records and will promote the public's interest" by protecting every individual's constitutional rights. *Id.*

7

Furthermore, Plaintiffs do not seek to withhold their identity from Defendants (through their counsel) or the Court, but only to proceed pseudonymously to prevent disclosure of Plaintiffs' identities in public documents. Allowing Plaintiffs to proceed under pseudonyms will not prejudice Defendants; Defendants (through their counsel) will know each Plaintiff's identity. "[I]t is unclear how [the Court's grant of the requested relief] would … hinder [] [Defendants'] preparation" of the case, as Defendants here would still be able "to obtain all the information necessary to address" the issues in this case without public disclosure of Plaintiffs' names. *Porter*, 370 F.3d at 561; *see also Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) (finding "the relief sought by th[e] motion [to proceed pseudonymously] will not prejudice defendants" as plaintiff "d[id] not seek to withhold his identity from defendants but only wishes to prevent disclosure of his identity in public documents"); *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (granting motion to proceed under pseudonym where defendant "already [knew] Doe's true identity").

## II.  PERMITTING PLAINTIFFS TO PROCEED UNDER PSEUDONYMS PREVENTS THE DISCLOSURE OF HIGHLY SENSITIVE INFORMATION, PREVENTS THE IRREPARABLE HARM THAT THIS LITIGATION SEEKS TO AVOID, AND PROTECTS THE MINOR PLAINTIFFS FROM THE REAL DANGER OF PHYSICAL HARM.

### A.  Denial of the Motion Would Result in the Disclosure of Highly Sensitive and Personal Information.

Courts have recognized that a person's transgender status is of an "excruciatingly private and intimate nature" that "is really beyond debate" "for persons who wish to preserve privacy in the matter." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999); *see also Foster*, 2019 WL 329548, at *2 (finding "the disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s transgender status and his diagnosed medical condition—gender dysphoria" and observing that "other courts have recognized the highly

personal and sensitive nature of a person's transgender status and thus have permitted transgender litigants to proceed under pseudonym"); *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) ("forced disclosure of a transgender person's most private information"—that being "their transgender status"—violates "their constitutional right to informational privacy"); *Love v. Johnson*, 146 F. Supp. 3d 848, 856 (E.D. Mich. 2015) (finding that "requiring Plaintiffs to disclose their transgender status ... directly implicates their fundamental right of privacy"); *K.L. v. State*, No. 3AN–11–05431 CI, 2012 WL 2685183, at *6 (Alaska Super. Ct. Mar. 12, 2012) ("The Court agrees that one's transgender[] status is private, sensitive personal information" and "is entitled to protection."). Simply put, one's gender identity is "among the most intimate parts of one's life." *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 74 (D.R.I. 1992). "Disclosing that one is transgender involves a deep personal choice which the government cannot compel, unless disclosure furthers a valid public interest." *Arroyo Gonzalez*, 305 F. Supp. 3d at 333.

Recognizing the highly personal and sensitive nature of a person's transgender status, courts routinely allow transgender litigants to proceed under pseudonyms. *See, e.g.*, Temporary Order Allowing Pseudonym Litigation, *Bridge v. Okla. State Dep't of Educ.*, No. CIV-22-00787-JD (W.D. Okla. Sept. 12, 2022), ECF No. 11; *Foster*, 2019 WL 329548; *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018); *Doe v. Dist. of Columbia.*, No. 13-878 (RDM), 2016 WL 6088262 (D.D.C. Oct. 18, 2016); *Love*, 146 F. Supp. 3d 848; *Doe v. United Consumer Fin. Servs.*, 2001 WL 34350174 (N.D. Ohio Nov. 9, 2001); *Blue Cross*, 794 F. Supp. 72; *Doe v. Alexander*, 510 F. Supp. 900 (D. Minn. 1981); *McClure v. Harris*, 503 F. Supp. 409 (N.D. Cal. 1980), *rev'd on other grounds sub nom. Schweiker v. McClure*, 456 U.S. 188 (1982); *Doe v. McConn*, 489 F. Supp. 76 (S.D. Tex. 1980).

Further, the Minor Plaintiffs' private medical history and experiences as transgender adolescents would be rendered public through litigation if they are not allowed to proceed anonymously. This litigation involves the unconstitutional deprivation of necessary medical treatments for the Minor Plaintiffs. As such, it necessarily involves detailed allegations of the Minor Plaintiffs' confidential medical information.

The Tenth Circuit has repeatedly recognized that "confidential medical information is entitled to constitutional privacy protection," *A.L.A. v. W. Valley City*, 26 F.3d 989, 990 (10th Cir. 1994), and a right to privacy exists in the non-disclosure of personal information, including confidential medical information. *See Royce v. Veteran Affs. Reg'l Off.*, No. 08–cv–01993–KMT–KLM, 2009 WL 1904332, at *7 (D. Colo. July 1, 2009) (citing *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000)); *cf. Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 549 (D.N.J. 2006) (noting that "many courts have recognized pseudonym use" in cases involving mental health).

The Minor Plaintiffs' medical diagnoses of gender dysphoria and related gender-affirming medical care are central issues in this case. They have a right to privacy for their personal medical information and are entitled to protection from public disclosure. *See Powell*, 175 F.3d at 112 (transgender people "are among those who possess a constitutional right to maintain medical confidentiality"); *Foster*, 2019 WL 329548, at *2 ("the disclosure of [plaintiff]'s identity would reveal matters of a highly sensitive and personal nature, specifically [plaintiff]'s … diagnosed medical condition—gender dysphoria").

Protection of the Minor Plaintiffs' privacy rights warrants allowing them and their parents and guardians to proceed under pseudonyms.

**B.      Denial of the Motion Would Cause the Injury this Litigation Seeks to Avoid.**

Plaintiffs have filed suit to remedy the discriminatory and unconstitutional Health Care Ban prohibiting the provision of medically necessary gender-affirming care and the Hospital

Defendants' unlawful policy of denying that care, both of which endanger the health and wellbeing of transgender adolescents in Oklahoma. The Minor Plaintiffs will suffer distress, humiliation, embarrassment, emotional pain and anguish, violation of their dignity, and will suffer harms to their short- and long-term health and wellbeing if they are denied access to medically necessary health care.

The Minor Plaintiffs are particularly worried about the deprivation of gender-affirming care because the loss of that care will make it more likely that they are misgendered or identified as transgender in public. *See, e.g.*, Brandon Boe Decl. ¶¶ 7-9 (describing Brandon's efforts to appear more masculine and avoid misgendering in public); Donna Doe Decl. ¶¶ 18, 20 (describing her concern that her transgender granddaughter will be outed as transgender without gender-affirming care); Daphne Doe Decl. ¶¶ 11, 17 (describing Daphne's fears that she will start looking different from other girls without gender-affirming care and once again be bullied for being transgender); Peter Poe Decl. ¶¶ 14, 16 (describing Peter's fear of losing gender-affirming care and being misgendered in public); Ryan Roe Decl. ¶¶ 9-11, 27 (describing Ryan's experience of bullying in school and fear of returning to being uncomfortable in his body without gender-affirming care); Lydia Loe Decl. ¶¶ 7-11, 16 (describing minor Lydia's rejection by former foster families for being transgender and fear of being misgendered in public).

Requiring the Minor Plaintiffs to reveal their transgender status publicly as a condition of litigating their right to receive the gender-affirming care that otherwise would allow them to keep their transgender status private would subject them to the very harms of discrimination and harassment they seek to prevent through litigation. *See Lindsey*, 592 F.2d at 1125 (explaining "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid"

11

(citation omitted)); *see also M.T. v. Olathe Pub. Schs. USD 233*, No. 17-2710-JAR-GEB, 2018 WL 806210, at *3 (D. Kan. Feb. 9, 2018) (finding that "the real potential of additional psychological harm—one of the very injuries litigated against—is enough to outweigh the public interest in disclosure" of the plaintiff's identity). "Justice should not carry such a high price." *Plaintiff B v. Francis*, 631 F.3d 1310, 1319 (11th Cir. 2011).

The prospect of Plaintiffs being forced to maintain this suit in their own names as the cost of bringing a suit to challenge and prevent discrimination strongly outweighs the public interest in disclosure.

C. **Disclosure of Plaintiffs' Identities Would Expose Them to the Risk of Stigmatization, Discrimination, Harassment, and Violence.**

Real danger of physical harm is an "exceptional circumstance[] warranting some form of anonymity in judicial proceedings." *Femedeer*, 227 F.3d at 1246; *M.M.*, 139 F.3d at 803; *see also Doe v. USD No. 237 Smith Ctr. Sch. Dist.*, No. 16-cv-2801-JWL-TJJ, 2017 WL 3839416, at *11 (D. Kan. Sept. 1, 2017). Here, Plaintiffs allege that disclosing the Minor Plaintiffs' "transgender status will subject [them] to discrimination, harassment, and violence." *Foster*, 2019 WL 329548, at *2. These "fears are justified." *Id.*

Numerous courts have recognized that the "hostility and discrimination that transgender individuals face in our society today is well documented." *Brocksmith v. United States*, 99 A.3d 690, 698 n.8 (D.C. 2014); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017), *abrogated on other grounds by Ill. Republican Party v. Pritzker*, 973 F.3d 760 (2020); *Karnoski v. Trump*, NO. C17-1297-MJP, 2018 WL 1784464, at *10 (W.D. Wash. Apr. 13, 2018), *vacated on other grounds*, 926 F.3d 1180 (9th Cir. 2019); *Love*, 146 F. Supp. 3d at 856; *Adkins v. City of N.Y.*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 611 (4th Cir. 2020). Involuntary

12

disclosure of a person's transgender status thus "exposes transgender individuals to a substantial risk of stigma, discrimination, intimidation, violence, and danger." *Arroyo Gonzalez*, 305 F. Supp. 3d at 333; *see also F. V.*, 286 F. Supp. 3d at 1137.

The threat of physical harm to transgender individuals due to the disclosure of their transgender status is real. *See Foster*, 2019 WL 329548, at *2. As one court recognized, "there exist numerous documented instances of those targeted for violence based on their ... gender identity." *In re E.P.L.*, 891 N.Y.S.2d 619, 621 (Sup. Ct. 2009).

These well-documented dangers are present in Oklahoma. Numerous individuals have been murdered in Oklahoma because they are transgender.[4] A 12-year-old transgender student in Oklahoma was violently threatened by a group of parents with plans to attack the child with a knife and have her beaten up by other students.[5] In the 2015 U.S. Transgender Survey, the largest nationwide study of transgender discrimination, 68% of Oklahoma respondents known or perceived as transgender experienced some form of mistreatment at some point between Kindergarten and Grade 12. This mistreatment included being verbally harassed, prohibited from

---

[4] *See, e.g.*, Muri Assuncao, *Oklahoma Transgender Man Shot to Death While Driving His Cab on New Year's Day; Survived by Wife, Four Children*, N.Y. DAILY NEWS (Jan 3, 2020, 5:44 PM), https://www.nydailynews.com/news/crime/ny-transgender-man-shot-to-death-driving-cab-oklahoma-20200103-ss23jcpaovdevlbovx2n72blwe-story.html; *Oklahoma Man Convicted of Killing Transgender Woman*, OKLA. FOX 25 (Apr. 25, 2019, 3:34 PM), https://okcfox.com/news/local/oklahoma-man-convicted-of-killing-transgender-woman.

[5] *See* Mary Emily O'Hara, *Parents Threatening a Transgender Child Caused Entire School District to Shut Down*, THEM (Aug. 13, 2018), https://www.them.us/story/parents-threaten-trans-child-student.

dressing according to their gender identity, disciplined more harshly, or physically or sexually assaulted.[6]

The animosity towards transgender persons extends to those who support them, including their parents. An Oklahoma school board member recently publicly urged parents who support their transgender children to kill themselves.[7] The legislative debates around the Health Care Ban were accompanied by hostile comments about transgender minors and their parents: Oklahoma legislators referred to transgender minors as "delusional" or "misguided" and in need of "wise and clear biblical guidance"; compared providing gender-affirming care to "starving your child to death"; and referred to being transgender as a path of "desolation, destruction, degeneracy." *See generally* Complaint at Section III.

Unfortunately, Plaintiffs' fears that they will be exposed to an increased risk of discrimination, harassment, and even violence should the transgender status of the Minor Plaintiffs become publicly known are real and well-founded. In this case, some of the Minor Plaintiffs have already been subject to bullying, discrimination, and harassment because they are transgender, and the Plaintiffs have taken steps to protect the Minor Plaintiffs from discrimination in their communities. *See, e.g.*, Daphne Doe Decl. ¶¶ 9-10 (describing minor Daphne's bullying at school based on her transgender status, and her efforts to avoid bullying at her new school); Benjamin Boe Decl. ¶ 16 (describing parent Benjamin's search for a new faith community that will be

---

[6] NAT'L CTR. FOR TRANSGENDER EQ., 2015 U.S. TRANSGENDER SURVEY, OKLAHOMA STATE REPORT (2017), https://transequality.org/sites/default/files/docs/usts/USTSOKStateReport(1017).pdf.

[7] Madison Hall, *An Oklahoma School Board Member Posted a TikTok Telling Parents Who Support Transgender Kids to Kill Themselves*, INSIDER (Feb. 10, 2022, 4:25 PM), https://www.insider.com/school-board-member-criticized-parents-trans-support-tiktok-2022-2.

accepting of his transgender son); Ryan Roe Decl. ¶¶ 9-11, 27 (describing minor Ryan's experience of bullying in school for being gender nonconforming).

Because of the real risks of discrimination, harassment, and violence that transgender people face on account of their transgender status, courts regularly have allowed transgender plaintiffs to proceed under pseudonyms. *See, e.g.*, *Blue Cross*, 794 F. Supp. at 73 (noting that "in this era of seemingly increased societal intolerance," the court "will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure"); *In re E.P.L.*, 891 N.Y.S.2d at 621 (shielding publication of a transgender individual's name in seeking a court order regarding a name change based upon his "right to feel threatened for his personal safety in the event his transgender status is made public"). The Court should do the same here.

## CONCLUSION

The ages of the Minor Plaintiffs, the highly sensitive and private nature of the information at issue, the history of violence and discrimination toward transgender people, and the present-day vitriol directed by public officials toward transgender adolescents, their parents, and those who defend and associate with them, all support granting leave for the Minor Plaintiffs and Parent Plaintiffs to proceed under pseudonyms. Granting this motion will not prejudice Defendants or the public. In sum, "this is an exceptional case where the need for anonymity outweighs the public interest" in disclosing the identities of the Minor Plaintiffs and Parent Plaintiffs.

For these and the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to proceed under pseudonyms and for a protective order limiting disclosure of their identities to counsel for Defendants.

Date: May 2, 2023

/s/*Megan Lambert*
Megan Lambert
   (OBA# 33216)
**American Civil Liberties Union**
  **Foundation of Oklahoma**
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org

Chase Strangio*
Harper Seldin*
**American Civil Liberties Union**
  **Foundation**
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
cstrangio@aclu.org
hseldin@aclu.org

Laura J. Edelstein*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com

Luke C. Platzer*
Madeleine V. Findley*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
LPlatzer@jenner.com

Lauren M. Greene*
Blaine R. Valencia*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
LGreene@jenner.com
BValencia@jenner.com

*Application for admission pro hac vice forthcoming.*

Respectfully submitted

Omar Gonzalez-Pagan*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Shelly L. Skeen*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
Oak Lawn Ave, Ste. 500
Dallas, TX 75219
(214) 219-8585
sskeen@lambdalegal.org

Sasha Buchert*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC 20006
(202) 804-6245
sbuchert@lambdalegal.org

Remi Jaffre*
**Jenner & Block LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
RJaffre@jenner.com

Lillian M. McGuire*
Jocelyn Sitton*
Daniel L. Robertson*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
LMcGuire@jenner.com
JSitton@jenner.com
DRobertson@jenner.com

## CERTIFICATE OF SERVICE

I hereby certify that this motion will be served concurrently with the service of the Summonses and Complaint in this matter.

>*/s/ Megan Lambert*
>Megan Lambert
>Oklahoma Bar Number: 33216
>American Civil Liberties Union of Oklahoma Foundation
>P.O. Box 13327
>Oklahoma City, OK 73113
>(405) 524-8511
>mlambert@acluok.org
>*Counsel for Plaintiffs*