# Exhibit 1

# An Act

ENROLLED SENATE
BILL NO. 613

By: Daniels, Bullard, Jett,
Burns, Bergstrom, Hamilton,
Woods, Rogers, Stephens,
Dahm, and Standridge of the
Senate

and

Hasenbeck, Hardin, West
(Kevin), Gann, and
Crosswhite Hader of the
House

An Act relating to health care; defining terms;
prohibiting gender transition procedures for
children; providing for administrative, criminal, and
civil enforcement; authorizing certain civil actions
and relief; authorizing Attorney General to bring
enforcement actions; amending 59 O.S. 2021, Sections
509, 567.8, and 637, which relate to health care
provider licensure; adding violations and penalties;
updating statutory language; providing for
codification; and declaring an emergency.

SUBJECT:  Health care

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1.    NEW LAW    A new section of law to be codified
in the Oklahoma Statutes as Section 2607.1 of Title 63, unless there
is created a duplication in numbering, reads as follows:

A.  As used in this section:

1.  "Child" means any person under eighteen (18) years of age;

2.   a.   "Gender transition procedures" means the following
          medical or surgical services performed for the purpose
          of attempting to affirm the minor's perception of his
          or her gender or biological sex, if that perception is
          inconsistent with the minor's biological sex:

     (1)   surgical procedures that alter or remove physical
           or anatomical characteristics or features that
           are typical for the individual's biological sex,
           or

     (2)   puberty-blocking drugs, cross-sex hormones, or
           other drugs to suppress or delay normal puberty
           or to promote the development of feminizing or
           masculinizing features consistent with the
           opposite biological sex.

     b.   Gender transition procedures do not include:

     (1)   behavioral health care services or mental health
           counseling,

     (2)   medications to treat depression and anxiety,

     (3)   medications prescribed, dispensed, or
           administered specifically for the purpose of
           treating precocious puberty or delayed puberty in
           that patient,

     (4)   services provided to individuals born with
           ambiguous genitalia, incomplete genitalia, or
           both male and female anatomy, or biochemically
           verifiable disorder of sex development (DSD),
           including but not limited to:

           (a)   46,XX DSD,

           (b)   46,XY DSD,

           (c)   sex chromosomes DSDs,

           (d)   XX or XY sex reversal, and

       (e)   ovotesticular disorder,

   (5)   the treatment of any infection, injury, disease, or disorder that has been caused by or exacerbated by the performance of gender transition procedures, whether or not the gender transition procedure was performed in accordance with state and federal law,

   (6)   the treatment of any physical injury or illness that would, as certified by a physician, place the individual in imminent danger of death or impairment of a major bodily function unless such treatment is performed, or

   (7)  the provision of puberty-blocking drugs or cross-sex hormones to a minor currently receiving such drugs or hormones as of the effective date of this act for a period of not more than six (6) months solely for the purpose of assisting the minor with gradually decreasing and discontinuing use of the drugs or hormones.

   3.   "Health care provider" means a physician, physician assistant, Advanced Practice Registered Nurse, or any other person who is licensed, certified, or otherwise authorized by the laws of this state to administer health care in the ordinary course of the practice of his or her profession.

   B.   A health care provider shall not knowingly provide gender transition procedures to any child.

   C.   A health care provider found in violation of subsection B of this section shall, upon an adverse ruling by the provider's respective licensing board, be guilty of unprofessional conduct. Disciplinary proceedings against the health care provider may be commenced at any time after the commission of such offense.

   D.   A health care provider who violates subsection B of this section shall, upon conviction, be guilty of a felony.  Prosecution for a criminal violation of subsection B of this section shall be

commenced not later than the date on which the child attains the age of forty-five (45) years.

E.   1.   The parent, legal guardian, or next friend of a child to whom a health care provider has provided one or more gender transition procedures in violation of subsection B of this section may bring a civil action against the health care provider.   The parent, legal guardian, or next friend shall bring a claim for the violation no later than the date on which the child attains the age of majority.

2.   A child to whom a health care provider has provided one or more gender transition procedures may bring an action throughout his or her minority through a parent, legal guardian, or next friend, and may bring an action in his or her own name upon reaching majority at any time until the date on which the child attains the age of forty-five (45) years.

3.   The court in such action may award compensatory damages, punitive damages, injunctive relief, or any other appropriate relief.   Additionally, the court shall award court costs and reasonable attorney fees to a prevailing party who establishes a violation of this section.

4.   Notwithstanding any other provision of law, an action under this subsection may be commenced, and relief may be granted, in a judicial proceeding without regard to whether the person commencing the action has sought or exhausted available administrative remedies.

F.   The Attorney General may bring an action to enforce compliance with this act.   Nothing in this act shall be construed to deny, impair, or otherwise affect any right or authority of the Attorney General, the state, or an agency, officer, or employee of the state to institute or intervene in any action or proceeding.

SECTION 2.      AMENDATORY      59 O.S. 2021, Section 509, is amended to read as follows:

Section 509.   The words "unprofessional conduct" as used in Sections 481 through 518.1 of this title are hereby declared to include, but shall not be limited to, the following:

ENR. S. B. NO. 613                                            Page 4

1.   Procuring, aiding or abetting a criminal operation;

2.   The obtaining of any fee or offering to accept any fee, present or other form of remuneration whatsoever, on the assurance or promise that a manifestly incurable disease can or will be cured;

3.   Willfully betraying a professional secret to the detriment of the patient;

4.   Habitual intemperance or the habitual use of habit-forming drugs;

5.   Conviction or confession of, or plea of guilty, nolo contendere, no contest or Alford plea to a felony or any offense involving moral turpitude;

6.   All advertising of medical business in which statements are made which are grossly untrue or improbable and calculated to mislead the public;

7.   Conviction or confession of, or plea of guilty, nolo contendere, no contest or Alford plea to a crime involving violation of:

        a.   the antinarcotic or prohibition laws and regulations of the federal government,

        b.   the laws of this state,

        c.   State Commissioner of Health rules, or

        d.   a determination by a judge or jury;

8.   Dishonorable or immoral conduct which is likely to deceive, defraud, or harm the public;

9.   The commission of any act which is a violation of the criminal laws of any state when such act is connected with the physician's practice of medicine.  A complaint, indictment or confession of a criminal violation shall not be necessary for the enforcement of this provision.  Proof of the commission of the act

while in the practice of medicine or under the guise of the practice of medicine shall be unprofessional conduct;

10.   Failure to keep complete and accurate records of purchase and disposal of controlled drugs or of narcotic drugs;

11.   The writing of false or fictitious prescriptions for any drugs or narcotics declared by the laws of this state to be controlled or narcotic drugs;

12.   Prescribing or administering a drug or treatment without sufficient examination and the establishment of a valid physician-patient relationship and not prescribing in a safe, medically accepted manner;

13.   The violation, or attempted violation, direct or indirect, of any of the provisions of the Oklahoma Allopathic Medical and Surgical Licensure and Supervision Act, either as a principal, accessory or accomplice;

14.   Aiding or abetting, directly or indirectly, the practice of medicine by any person not duly authorized under the laws of this state;

15.   The inability to practice medicine with reasonable skill and safety to patients by reason of age, illness, drunkenness, excessive use of drugs, narcotics, chemicals, or any other type of material or as a result of any mental or physical condition.   In enforcing this section the State Board of Medical Licensure and Supervision may, upon probable cause, request a physician to submit to a mental or physical examination by physicians designated by it. If the physician refuses to submit to the examination, the Board shall issue an order requiring the physician to show cause why the physician will not submit to the examination and shall schedule a hearing on the order within thirty (30) days after notice is served on the physician, exclusive of the day of service.   The physician shall be notified by either personal service or by certified mail with return receipt requested.   At the hearing, the physician and the physician's attorney are entitled to present any testimony and other evidence to show why the physician should not be required to submit to the examination.   After a complete hearing, the Board shall issue an order either requiring the physician to submit to the

examination or withdrawing the request for examination.  The medical license of a physician ordered to submit for examination may be suspended until the results of the examination are received and reviewed by the Board;

16.  a.   Prescribing, dispensing or administering of controlled substances or narcotic drugs in excess of the amount considered good medical practice,

b.   Prescribing, dispensing or administering controlled substances or narcotic drugs without medical need in accordance with pertinent licensing board standards, or

c.   Prescribing, dispensing or administering opioid drugs in excess of the maximum limits authorized in Section 2-309I of Title 63 of the Oklahoma Statutes;

17.  Engaging in physical conduct with a patient which is sexual in nature, or in any verbal behavior which is seductive or sexually demeaning to a patient;

18.  Failure to maintain an office record for each patient which accurately reflects the evaluation, treatment, and medical necessity of treatment of the patient;

19.  Failure to provide necessary ongoing medical treatment when a doctor-patient relationship has been established, which relationship can be severed by either party providing a reasonable period of time is granted;

20.  Performance of an abortion as defined by Section 1-730 of Title 63 of the Oklahoma Statutes, except for an abortion necessary to prevent the death of the mother or to prevent substantial or irreversible physical impairment of the mother that substantially increases the risk of death.  The performance of an abortion on the basis of the mental or emotional health of the mother shall be a violation of this paragraph, notwithstanding a claim or diagnosis that the woman may engage in conduct which she intends to result in her death.  The Board shall impose a penalty as provided in Section 509.1 of this title on a licensee who violates this paragraph.  The

penalty shall include, but not be limited to, suspension of the license for a period ~~of~~ not less than one (1) year; ~~or~~

21.  Failure to provide a proper and safe medical facility setting and qualified assistive personnel for a recognized medical act, including but not limited to an initial in-person patient examination, office surgery, diagnostic service or any other medical procedure or treatment.  Adequate medical records to support diagnosis, procedure, treatment or prescribed medications must be produced and maintained; or

22.  Knowingly providing gender transition procedures as defined in Section 1 of this act to a child.

SECTION 3.    NEW LAW    A new section of law to be codified in the Oklahoma Statutes as Section 519.12 of Title 59, unless there is created a duplication in numbering, reads as follows:

Unprofessional conduct by a physician assistant shall include, but not be limited to, knowingly providing gender transition procedures as defined in Section 1 of this act to a child.

SECTION 4.    AMENDATORY    59 O.S. 2021, Section 567.8, is amended to read as follows:

Section 567.8.  A.  The Oklahoma Board of Nursing shall have the power to take any or all of the following actions:

1.  To deny, revoke or suspend any:

a.  licensure to practice as a Licensed Practical Nurse, single-state or multistate,

b.  licensure to practice as a Registered Nurse, single-state or multistate,

c.  multistate privilege to practice in Oklahoma,

d.  licensure to practice as an Advanced Practice Registered Nurse,

     e.    certification to practice as an Advanced Unlicensed Assistant,

     f.    authorization for prescriptive authority, or

     g.    authority to order, select, obtain and administer drugs;

2. To assess administrative penalties; and

3. To otherwise discipline applicants, licensees or Advanced Unlicensed Assistants.

B. The Board shall impose a disciplinary action against the person pursuant to the provisions of subsection A of this section upon proof that the person:

1. Is guilty of deceit or material misrepresentation in procuring or attempting to procure:

     a.    a license to practice registered nursing, licensed practical nursing, or a license to practice advanced practice registered nursing with or without either prescriptive authority recognition or authorization to order, select, obtain and administer drugs, or

     b.    certification as an Advanced Unlicensed Assistant;

2. Is guilty of a felony, or any offense substantially related to the qualifications, functions or duties of any licensee or Advanced Unlicensed Assistant, or any offense an essential element of which is fraud, dishonesty, or an act of violence, whether or not sentence is imposed, or any conduct resulting in the revocation of a deferred or suspended sentence or probation imposed pursuant to such conviction. For the purposes of this paragraph, "substantially related" means the nature of criminal conduct for which the person was convicted has a direct bearing on the fitness or ability to perform one or more of the duties or responsibilities necessarily related to the occupation;

3. Fails to adequately care for patients or to conform to the minimum standards of acceptable nursing or Advanced Unlicensed

Assistant practice that, in the opinion of the Board, unnecessarily exposes a patient or other person to risk of harm;

4. Is intemperate in the use of alcohol or drugs, which use the Board determines endangers or could endanger patients;

5. Exhibits through a pattern of practice or other behavior actual or potential inability to practice nursing with sufficient knowledge or reasonable skills and safety due to impairment caused by illness, use of alcohol, drugs, chemicals or any other substance, or as a result of any mental or physical condition, including deterioration through the aging process or loss of motor skills, mental illness, or disability that results in inability to practice with reasonable judgment, skill or safety; provided, however, the provisions of this paragraph shall not be utilized in a manner that conflicts with the provisions of the Americans with Disabilities Act;

6. Has been adjudicated as mentally incompetent, mentally ill, chemically dependent or dangerous to the public or has been committed by a court of competent jurisdiction, within or without this state;

7. Is guilty of unprofessional conduct as defined in the rules of the Board;

8. Is guilty of any act that jeopardizes a patient's life, health or safety as defined in the rules of the Board;

9. Violated a rule promulgated by the Board, an order of the Board, or a state or federal law relating to the practice of registered, practical or advanced practice registered nursing or advanced unlicensed assisting, or a state or federal narcotics or controlled dangerous substance law including, but not limited to prescribing, dispensing or administering opioid drugs in excess of the maximum limits authorized in Section 2-309I of Title 63 of the Oklahoma Statutes;

10. Has had disciplinary actions taken against the individual's registered or practical nursing license, advanced unlicensed assistive certification, or any professional or occupational

license, registration or certification in this or any state, territory or country;

11. Has defaulted or been terminated from the peer assistance program for any reason;

12. Fails to maintain professional boundaries with patients, as defined in the Board rules; ~~or~~

13. Engages in sexual misconduct, as defined in Board rules, with a current or former patient or key party, inside or outside the health care setting; or

14. Has knowingly provided gender transition procedures as defined in Section 1 of this act to a child.

C. Any person who supplies the Board information in good faith shall not be liable in any way for damages with respect to giving such information.

D. The Board may cause to be investigated all reported violations of the Oklahoma Nursing Practice Act. Information obtained during an investigation into possible violations of the Oklahoma Nursing Practice Act shall be kept confidential, but may be introduced by the state in administrative proceedings before the Board, whereupon the information admitted becomes a public record. Public records maintained by the agency are administrative records, not public civil or criminal records.

Confidential investigative records shall not be subject to discovery or subpoena in any civil or criminal proceeding, except that the Board may give such information to law enforcement and other state agencies as necessary and appropriate in the discharge of the duties of that agency and only under circumstances that ensure against unauthorized access to the information.

E. The Board may authorize the Executive Director to issue a confidential letter of concern to a licensee when evidence does not warrant formal proceedings, but the Executive Director has noted indications of possible errant conduct that could lead to serious consequences and formal action.

F.   All individual proceedings before the Board shall be conducted in accordance with the Administrative Procedures Act.

G.   At a hearing the accused shall have the right to appear either personally or by counsel, or both, to produce witnesses and evidence on behalf of the accused, to cross-examine witnesses and to have subpoenas issued by the designated Board staff.   If the accused is found guilty of the charges the Board may refuse to issue a renewal of license to the applicant, revoke or suspend a license, or otherwise discipline a licensee.

H.   A person whose license is revoked may not apply for reinstatement during the time period set by the Board.   The Board on its own motion may at any time reconsider its action.

I.   Any person whose license is revoked or who applies for renewal of registration and who is rejected by the Board shall have the right to appeal from such action pursuant to the Administrative Procedures Act.

J.   1.   Any person who has been determined by the Board to have violated any provisions of the Oklahoma Nursing Practice Act or any rule or order issued pursuant thereto shall be liable for an administrative penalty not to exceed Five Hundred Dollars ($500.00) for each count for which any holder of a certificate or license has been determined to be in violation of the Oklahoma Nursing Practice Act or any rule promulgated or order issued pursuant thereto.

2.   The amount of the penalty shall be assessed by the Board pursuant to the provisions of this section, after notice and an opportunity for hearing is given to the accused.   In determining the amount of the penalty, the Board shall include, but not be limited to, consideration of the nature, circumstances, and gravity of the violation and, with respect to the person found to have committed the violation, the degree of culpability, the effect on ability of the person to continue to practice, and any show of good faith in attempting to achieve compliance with the provisions of the Oklahoma Nursing Practice Act.

K.   The Board shall retain jurisdiction over any person issued a license, certificate or temporary license pursuant to the Oklahoma Nursing Practice Act, regardless of whether the license, certificate

or temporary license has expired, lapsed or been relinquished during or after the alleged occurrence or conduct prescribed by the Oklahoma Nursing Practice Act.

L.   In the event disciplinary action is imposed, any person so disciplined shall be responsible for any and all costs associated with satisfaction of the discipline imposed.

M.   In the event disciplinary action is imposed in an administrative proceeding, the Board shall have the authority to recover the monies expended by the Board in pursuing any disciplinary action, including but not limited to costs of investigation, probation or monitoring fees, administrative costs, witness fees, attorney fees and court costs.  This authority shall be in addition to the Board's authority to impose discipline as set out in subsection A of this section.

N.   The Executive Director shall immediately suspend the license of any person upon proof that the person has been sentenced to a period of continuous incarceration serving a penal sentence for commission of a misdemeanor or felony.  The suspension shall remain in effect until the Board acts upon the licensee's written application for reinstatement of the license.

O.   When a majority of the officers of the Board, which constitutes the President, Vice President and Secretary/Treasurer, find that preservation of the public health, safety or welfare requires immediate action, summary suspension of licensure or certification may be ordered before the filing of a sworn complaint or at any other time before the outcome of an individual proceeding. The summary suspension of licensure or certification may be ordered without compliance with the requirements of the Oklahoma Open Meeting Act.  Within seven (7) days after the summary suspension, the licensee shall be notified by letter that summary suspension has occurred.  The summary suspension letter shall include notice of the date of the proposed hearing to be held in accordance with ~~Oklahoma Administrative Code~~ Section 485:10-11-2 of the Oklahoma Administrative Code and the Administrative Procedures Act, within ninety (90) days of the date of the summary suspension letter, and shall be signed by one of the Board officers.

P.   In any proceeding in which the Board is required to serve an order on an individual, the Board may send such material to the individual's address of record with the Board.   If the order is returned with a notation by the United States Postal Service indicating that it is undeliverable for any reason, and the records of the Board indicate that the Board has not received any change of address since the order was sent, as required by the rules of the Board, the order and any subsequent material relating to the same matter sent to the most recent address on file with the Board shall be deemed by the court as having been legally served for all purposes.

SECTION 5.   AMENDATORY   59 O.S. 2021, Section 637, is amended to read as follows:

Section 637.   A.   The State Board of Osteopathic Examiners may refuse to admit a person to an examination or may refuse to issue or reinstate or may suspend or revoke any license issued or reinstated by the Board upon proof that the applicant or holder of such a license:

1.   Has obtained a license, license renewal or authorization to sit for an examination, as the case may be, through fraud, deception, misrepresentation or bribery; or has been granted a license, license renewal or authorization to sit for an examination based upon a material mistake of fact;

2.   Has engaged in the use or employment of dishonesty, fraud, misrepresentation, false promise, false pretense, unethical conduct or unprofessional conduct, as may be determined by the Board, in the performance of the functions or duties of an osteopathic physician, including but not limited to the following:

> a.   obtaining or attempting to obtain any fee, charge, tuition or other compensation by fraud, deception or misrepresentation; willfully and continually overcharging or overtreating patients; or charging for visits to the physician's office which did not occur or for services which were not rendered,

b.   using intimidation, coercion or deception to obtain or
     retain a patient or discourage the use of a second
     opinion or consultation,

c.   willfully performing inappropriate or unnecessary
     treatment, diagnostic tests or osteopathic medical or
     surgical services,

d.   delegating professional responsibilities to a person
     who is not qualified by training, skill, competency,
     age, experience or licensure to perform them, noting
     that delegation may only occur within an appropriate
     doctor-patient relationship, wherein a proper patient
     record is maintained including, but not limited to, at
     the minimum, a current history and physical,

e.   misrepresenting that any disease, ailment, or
     infirmity can be cured by a method, procedure,
     treatment, medicine or device,

f.   acting in a manner which results in final disciplinary
     action by any professional society or association or
     hospital or medical staff of such hospital in this or
     any other state, whether agreed to voluntarily or not,
     if the action was in any way related to professional
     conduct, professional competence, malpractice or any
     other violation of the Oklahoma Osteopathic Medicine
     Act,

g.   signing a blank prescription form; or dispensing,
     prescribing, administering or otherwise distributing
     any drug, controlled substance or other treatment
     without sufficient examination or the establishment of
     a physician-patient relationship, or for other than
     medically accepted therapeutic or experimental or
     investigational purpose duly authorized by a state or
     federal agency, or not in good faith to relieve pain
     and suffering, or not to treat an ailment, physical
     infirmity or disease, or violating any state or
     federal law on controlled dangerous substances
     including, but not limited to, prescribing, dispensing
     or administering opioid drugs in excess of the maximum

limits authorized in Section 2-309I of Title 63 of the Oklahoma Statutes,

h.   engaging in any sexual activity within a physician-patient relationship,

i.   terminating the care of a patient without adequate notice or without making other arrangements for the continued care of the patient,

j.   failing to furnish a copy of a patient's medical records upon a proper request from the patient or legal agent of the patient or another physician; or failing to comply with any other law relating to medical records,

k.   failing to comply with any subpoena issued by the Board,

l.   violating a probation agreement or order with this Board or any other agency, and

m.   failing to keep complete and accurate records of purchase and disposal of controlled drugs or narcotic drugs;

3.   Has engaged in gross negligence, gross malpractice or gross incompetence;

4.   Has engaged in repeated acts of negligence, malpractice or incompetence;

5.   Has been finally adjudicated and found guilty, or entered a plea of guilty or nolo contendere in a criminal prosecution, for any offense reasonably related to the qualifications, functions or duties of an osteopathic physician, whether or not sentence is imposed, and regardless of the pendency of an appeal;

6.   Has had the authority to engage in the activities regulated by the Board revoked, suspended, restricted, modified or limited, or has been reprimanded, warned or censured, probated or otherwise disciplined by any other state or federal agency whether or not

voluntarily agreed to by the physician including, but not limited to, the denial of licensure, surrender of the license, permit or authority, allowing the license, permit or authority to expire or lapse, or discontinuing or limiting the practice of osteopathic medicine pending disposition of a complaint or completion of an investigation;

7.  Has violated or failed to comply with provisions of any act or regulation administered by the Board;

8.  Is incapable, for medical or psychiatric or any other good cause, of discharging the functions of an osteopathic physician in a manner consistent with the public's health, safety and welfare;

9.  Has been guilty of advertising by means of knowingly false or deceptive statements;

10.  Has been guilty of advertising, practicing, or attempting to practice under a name other than one's own;

11.  Has violated or refused to comply with a lawful order of the Board;

12.  Has been guilty of habitual drunkenness, or habitual addiction to the use of morphine, cocaine or other habit-forming drugs;

13.  Has been guilty of personal offensive behavior, which would include, but not be limited to, obscenity, lewdness, and molestation;

14.  Has performed an abortion as defined by Section 1-730 of Title 63 of the Oklahoma Statutes, except for an abortion necessary to prevent the death of the mother or to prevent substantial or irreversible physical impairment of the mother that substantially increases the risk of death.  The performance of an abortion on the basis of the mental or emotional health of the mother shall be a violation of this paragraph, notwithstanding a claim or diagnosis that the woman may engage in conduct which she intends to result in her death.  The Board shall impose a penalty as provided in this section and in Section 637.1 of this title on a licensee who violates this paragraph.  The penalty shall include, but not be

limited to, suspension of the license for a period ~~of~~ not less than one (1) year; ~~or~~

15. Has been adjudicated to be insane, or incompetent, or admitted to an institution for the treatment of psychiatric disorders; or

16. Has knowingly provided gender transition procedures as defined in Section 1 of this act to a child.

B. The State Board of Osteopathic Examiners shall neither refuse to renew, nor suspend, nor revoke any license, however, for any of these causes, unless the person accused has been given at least twenty (20) days' notice in writing of the charge against him or her and a public hearing by the Board; provided, three-fourths (3/4) of a quorum present at a meeting may vote to suspend a license in an emergency situation if the licensee affected is provided a public hearing within thirty (30) days of the emergency suspension.

C. The State Board of Osteopathic Examiners shall have the power to order or subpoena the attendance of witnesses, the inspection of records and premises and the production of relevant books and papers for the investigation of matters that may come before them. The presiding officer of the Board shall have the authority to compel the giving of testimony as is conferred on courts of justice.

D. Any osteopathic physician in ~~the State of Oklahoma~~ this state whose license to practice osteopathic medicine is revoked or suspended under this section shall have the right to seek judicial review of a ruling of the Board pursuant to the Administrative Procedures Act.

E. The Board may enact rules and regulations pursuant to the Administrative Procedures Act setting out additional acts of unprofessional conduct, which acts shall be grounds for refusal to issue or reinstate, or for action to condition, suspend or revoke a license.

SECTION 6. It being immediately necessary for the preservation of the public peace, health or safety, an emergency is hereby

declared to exist, by reason whereof this act shall take effect and
be in full force from and after its passage and approval.

Passed the Senate the 27th day of April, 2023.

_____
Presiding Officer of the Senate

Passed the House of Representatives the 26th day of April, 2023.

_____
Presiding Officer of the House
of Representatives

OFFICE OF THE GOVERNOR

Received by the Office of the Governor this ____1st____

day of ____May____, 20__23__, at __4:17__ o'clock __p.__ M.

By: _____

Approved by the Governor of the State of Oklahoma this __1st__

day of ____May____, 20__23__, at __6:05__ o'clock __p.__ M.

_____
Governor of the State of Oklahoma

OFFICE OF THE SECRETARY OF STATE

Received by the Office of the Secretary of State this __1st__

day of ____May____, 20__23__, at __6:11__ o'clock __P.__ M.

By: _____

ENR. S. B. NO. 613                                    Page 20