UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PETER POE, *et al.*,<br><br>                               *Plaintiffs,*<br>v.<br>GENTNER F. DRUMMOND, *et al.*,<br>                              *Defendants.* | No. 23-cv-00177-JFH-SH |

### REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS 15-53

Submitted by:

GARRY M. GASKINS, II, OBA #20212
  *Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov

ZACH WEST, OBA #30768
  *Director of Special Litigation*
AUDREY WEAVER, OBA #33258
WILL FLANAGAN, OBA #35110
  *Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Zach.West@oag.ok.gov
Audrey.Weaver@oag.ok.gov
William.Flanagan@oag.ok.gov

COUNSEL FOR DEFENDANTS 15-53                                                                                                            July 21, 2023

I. **Plaintiffs ignore *Dobbs* in favor of questionable lower court decisions.**

In moving for dismissal, Defendants centered their arguments on *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). In response, Plaintiffs virtually ignore *Dobbs*, choosing instead to highlight a smattering of lower court rulings. Thus, while a key binding precedent like *Dobbs* does not appear once in Plaintiffs' Table of Authorities, Doc. 118 at iii, Plaintiffs cite a district court decision from Tennessee so much that it merits a *passim* designation, *id.* at iv (citing *L.W. v. Skrmetti*, No. 3:23-cv-376, 2023 WL 4232308 (M.D. Tenn. June 28, 2023)). This approach gets things backwards. When the Supreme Court holds that "health and welfare laws" are "entitled to a 'strong presumption of validity'" and that this "applies even when the laws at issue concern matters of great social significance and moral substance[,]" *Dobbs*, 142 S. Ct. at 2284, it is binding here. What a district court says in Tennessee is not. Plaintiffs' intense focus on the latter rather than the former speaks volumes. This is especially so when the Tennessee decision has now been put on ice, as will be discussed momentarily.

Plaintiffs' only mention of *Dobbs* does not acknowledge one word from the decision. Plaintiffs instead argue that "[u]nlike the generally applicable law at issue in *Dobbs*, SB 613 is explicitly aimed at overriding the parental judgment and consent required for the care at issue." Doc. 118 at 20. Plaintiffs appear to believe the law in *Dobbs* was "generally applicable" because it applied to minors *and* adults, whereas the law here targets minors only (and by extension, overrides their parents' judgment). But the law in *Dobbs* obviously overrode "parental judgment" for minors, even if it also applied to adults. And regardless, laws applying to minors alone are ubiquitous. *See* Doc. 86 at 26 (collecting Oklahoma examples); *see also Thompson v. Oklahoma*, 487 U.S. 815, 824-25 (1988) ("All of this legislation is consistent with the experience of mankind … that the normal 15-year-old is not prepared to assume the full responsibilities of an adult."). Minors are not a protected class, and the Supreme Court and Tenth Circuit have repeatedly held that States have "a duty of the highest order to protect the interests of minor children." *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984); *see also Davis v. Reynolds*, 890 F.2d 1105,

1

1110 (10th Cir. 1989) ("[S]afeguarding the physical and psychological well-being of a minor … is a compelling [interest]." (citation omitted). Nor can *Dobbs* be read to prevent a State from prohibiting abortions for minors only. Such a holding—that States can rationally prohibit "medical" procedures for adults, but not for minors—would be absurd and entirely counterintuitive.

Earlier in the response, Plaintiffs allude to *Dobbs* by arguing that the laws upheld in cases concerning "abortion and pregnancy … were found to be facially neutral[,]" while claiming the laws at issue here "explicitly classify based on sex and transgender status." Doc. 118 at 11. In this version of the argument, the law in *Dobbs* was apparently "facially neutral" (or "generally applicable") because it didn't mention sex. But this is false. The Supreme Court did not make a "facially neutral" finding in *Dobbs*.[1] Nor could it have, because the law in question expressly referred to the female sex nearly a dozen times. *See* MISS. CODE § 41-41-191 (utilizing "mother," "maternal," "woman," and "women"). The same goes for most abortion laws, including Oklahoma's. *See, e.g.*, OKLA. STAT. tit. 21, § 861 ("Every person who administers to any *woman* …" (emphasis added)); *see also Dobbs*, 142 S. Ct. at 2285-2300 (collecting historic statutes). Plaintiffs' attempt to distinguish *Dobbs* in this way is meritless.

Rather than distinguish *Dobbs*, Plaintiffs repeatedly acknowledge the State is indeed regulating a treatment for a medical condition. *See, e.g.*, Doc. 118 at 10 n.6 ("gender-affirming care is a 'recognized treatment' for gender dysphoria, 'a known disease'"); *id.* at 8 (SB 613 "target[s] medical care for gender dysphoria"); *see also id.* at 1, 2, 15-17; Doc. 2, ¶¶ 54-58. Thus, dismissal is appropriate.

## II.   The Sixth Circuit has correctly interpreted Supreme Court precedent on this issue.

While Plaintiffs were largely ignoring *Dobbs* and touting lower court decisions, the Sixth Circuit was doing the opposite. In a decision issued the day after Plaintiffs filed their response, the Sixth Circuit stayed the Tennessee injunction that Plaintiffs relied on. *See L.W. v. Skrmetti*, No. 23-5600,

---

[1] The word "neutral" does not appear in the *Dobbs* majority. "Facial" (or a form of it) appears a couple times, but only in regard to discussing a "facial" challenge *to* the law. On the flip side, the Supreme Court labeled abortion "a medical procedure that only one sex can undergo." *Dobbs*, 142 S. Ct. at 2245.

2023 WL 4410576 (6th Cir. July 8, 2023). In doing so, the Sixth Circuit *repeatedly* referenced *Dobbs* in finding that "Tennessee is likely to succeed on its appeal of the preliminary injunction." *Id.* at *1. Take the standard for facial challenges, for instance. The Sixth Circuit first quoted a new Supreme Court decision reiterating that plaintiffs bringing "a facial challenge to a statute normally 'must establish that *no set of circumstances* exists under which the [statute] would be valid.'" *Id.* at *2 (quoting *United States v. Hansen,* 143 S. Ct. 1932, 1939 (2023), and *United States v. Salerno*, 481 U.S. 739, 745 (1987)). The Sixth Circuit then quoted *Dobbs* to emphasize that this is "a 'strict standard' that we have no authority to 'dilute[].'" *Id.* (quoting *Dobbs,* 142 S. Ct. at 2275). The Sixth Circuit criticized the lower court for "question[ing] whether the test applied and declin[ing] to engage with Tennessee's arguments that it could lawfully apply the Act in some settings." *Id.* "[I]t is not for lower-court judges to depart from *Salerno*," the Sixth Circuit cautioned, "meaning that plaintiffs must show no set of valid applications of the law before we may declare it invalid in all of its applications." *Id.* In short, the decision Plaintiffs rely on gave short shrift to binding precedent, and the Sixth Circuit corrected it.[2]

The Sixth Circuit also cited *Dobbs* to point out that state governments have an abiding interest in protecting children, *id.* at *4, to emphasize the "strong presumption of validity" for health and welfare laws mentioned above, *id.* at *5 (quoting *Dobbs*, 142 S. Ct. at 2284), to caution that "federal courts must be vigilant not to 'substitute' their views for those of legislatures," *id.* (quoting *Dobbs*, 142 S. Ct. at 2284), to observe that higher scrutiny is not required just because the "drugs' effects correspond to sex in … understandable ways[,]" *id.* at *6, to recognize that the "regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is" pretextual, *id.* (quoting *Dobbs*, 142 S. Ct. at 2245-46), and, similarly, to hold that if "a law restricting a medical procedure that applies only to women does not trigger heightened scrutiny,

---

[2] The only other circuit to chime in on these issues thus far, the Eighth Circuit, declined to cite *Dobbs*. *See Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022). This does not inspire confidence in the decision.

3

as in *Dobbs*, a law equally applicable to all minors, no matter their sex at birth, does not require such scrutiny either," *id.* Nearly all these *Dobbs* holdings were cited by Defendants here, and Plaintiffs have declined to respond directly.

The Sixth Circuit's injunction decision counsels in Defendants' favor here because it is anchored in the law. *See, e.g., id.* at *3 (focusing on the "original fixed meaning of … the due process or equal protection" clauses). Much like here, experts on both sides appeared in Tennessee (including Drs. Adkins, Janssen, Turban, Antommaria, Cantor, and Laidlaw) and the Sixth Circuit didn't discuss them. "Life-tenured federal judges," it instead observed, "should be wary of removing a vexing and novel topic of medical debate from the ebbs and flows of democracy by construing a largely unamendable federal constitution to occupy the field." *Id.* More particularly, it indicated (as did *Dobbs*) that the "Constitution does not require Tennessee to view these treatments the same way as the majority of experts . . . ." *Id.* at *5. As such, what would be the point of a lengthy discovery centered on a "battle of the experts"? The only facts the Sixth Circuit seemingly found significant—the newness of the procedures and the FDA's non-approval—have not been legitimately disputed here.

To be sure, the Sixth Circuit concluded its thoughtful and precedent-based opinion by acknowledging that its "initial views" formulated in a short window "may be wrong." *Id.* at *8. But such humility is a reason to trust the analysis, rather than reject it, as it indicates that the Sixth Circuit was truly searching for the correct answer rather than pre-determining an outcome and ignoring opposing views. In any event, the Sixth Circuit made a goal to resolve the injunction question definitively by September 30, which is just two months away. *Id.* We will know soon enough.

**III.     Plaintiffs have alleged no basis to challenge many of SB 613's potential applications.**

In moving to dismiss, Defendants pointed out two basic truths: (1) Plaintiffs admit prepubescents should not undergo these procedures, and (2) Plaintiffs are not seeking surgeries. Plaintiffs do not contest these points. *See* Doc. 118 at 5 n.4 ("No medical interventions are provided to pre-

4

pubertal children"). Plaintiffs instead make convoluted arguments as to why this should be ignored.

Defendants do not contest Plaintiffs' standing to challenge the subsection prohibiting "puberty-blocking drugs, cross-sex hormones, or other drugs" as applied to them, but, contrary to Plaintiffs' claim, Doc. 118 at 5, Defendants *do* deny a concrete injury has been alleged for anything else. In a nutshell, Plaintiffs' facial challenge should be dismissed because there are obviously legitimate applications of SB 613, *see Harmon v. City of Norman*, 61 F.4th 779, 795 (10th Cir. 2023) ("[I]t's generally 'harder to prevail on a facial challenge' because any constitutional application of the statute proves its constitutionality." (citation omitted)), and Plaintiffs lack standing to challenge SB 613 as applied to surgeries and pre-pubescent children. Defendants' standing arguments, in other words, are intertwined with their argument that a facial challenge plainly fails here as a matter of law.

Plaintiffs claim they are "confound[ed]" by Defendants' point about pre-pubescent children because the law "seeks to prohibit something that does not occur." Doc. 118 at 5 n.4. But that is Defendants' entire point: Both sides here *agree* that the relevant pre-pubescent surgeries and hormones should not happen. Plaintiffs want to disavow such practices, but then enjoin a law that would prohibit such practices, which is incoherent. Plaintiffs' allegation that such practices do not occur means nothing, even if true, given that they undeniably *could* occur. There is nothing impossible about giving hormones to or performing surgeries on children, and States are not required to assume that medical professionals will always follow guidelines. Otherwise, numerous regulations would be suspect.

Plaintiffs presumably tie themselves into a pretzel like this to try to maintain their facial challenge. To admit that the State is allowed to regulate pre-pubescents is to admit that SB 613 is not all bad. And Plaintiffs simply cannot concede that these procedures can be regulated, lest they undermine their equal protection claim. They must stick to their guns even when it makes no sense. But the implications of their position are staggering. By Plaintiffs' logic, treatments for an actual medical diagnosis, gender dysphoria, can *never be regulated*, even where the State and medical

5

professionals are in *full agreement* that certain practices are harmful or verboten.

Plaintiffs also claim Defendants' standing arguments are not true to the text of SB 613, *id.* at 5, but this is incorrect. SB 613 expressly separates potential applications into two categories (surgeries and drugs). OKLA. STAT. tit. 63, § 2607.1(A)(2)(a). And recognizing a separation between pre- and post-pubescent minors on this issue is commonsensical and not at all "unfaithful" to the statute. Again, Plaintiffs acknowledge this exact real-world separation in their Complaint. Doc. 2, ¶ 60. Precedent also contradicts Plaintiffs' contention that they can challenge an entire statute facially even though they only fall under one subsection. Indeed, just four months ago the Tenth Circuit held that demonstrators lacked standing to facially challenge four different subsections of a law. *Harmon*, 61 F.4th at 795. "To have standing, the demonstrators must show at a minimum that the threat of enforcement of these subsections has plausibly deterred their abortion-related speech," the Court held. *Id.* at 797. Moreover, even district court decisions touted by Plaintiffs found that the plaintiffs lacked standing to challenge surgical prohibitions. *See Skrmetti*, 2023 WL 4232308 at *5; *K.C. v. Indiv. Members of Medical Licensing Bd. of Ind.*, No. 1:23-cv-595, 2023 WL 4054086, at *7 (S.D. Ind. June 16, 2023).

**IV.** **Plaintiffs have not and cannot establish a fundamental liberty interest.**

Plaintiffs attempt to invoke an absolute parental right "to make medical decisions for their children." Doc. 118 at 21. This position finds no support in legal precedent, historical practice, or common sense. Although the Supreme Court has broadly recognized a fundamental parental interest in the "care, custody, and control" of one's children, Doc. 118 at 20 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)), neither the Supreme Court nor the Tenth Circuit has ever extended that interest to a fundamental parental right to choose a specific medical treatment or regimen. As the Sixth Circuit held: "the Supreme Court cases recognizing this [parental] right confine it to narrow fields, such as education . . . and visitation rights[,]" not selecting medical care. *Skrmetti*, 2023 WL 4410576, at *4.

Case law alluding to a right to direct a child's medical care invariably recognizes that any such

6

right is "not absolute[,]" and does not automatically trump the state's "compelling interest in and a solemn duty to protect the lives and health of the children within their borders." *PJ v. Wagner*, 603 F.3d 1182, 1197-98 (10th Cir. 2010); *see also New York v. Ferber*, 458 U.S. 747, 756–57 (1982) (similar); *Gomes v. Wood*, 451 F.3d 1122, 1128 (10th Cir. 2006) (similar); *Parham v. J.R.*, 442 U.S. 584, 603 (1979) ("[A] state is not without constitutional control over parental discretion");[3] *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("[T]he state as parens patriae may restrict the parent's control … in many other ways."). This interest is perhaps at its zenith when a child's "physical or mental health is jeopardized." *Parham*, 442 U.S. at 603; *see also id.* at 630-31 & n.18 (1979) (Brennan, J. concurring) ("[P]arents are not permitted to authorize operations with such far-reaching consequences [as sterilization].").

In sum, whatever level of protection the Constitution may guarantee a parent in directing medical care, it cannot be characterized as a *fundamental* liberty interest. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (describing a "fundamental" interest as one "the Fourteenth Amendment 'forbids the government to infringe . . . *at all*, *no matter what process is provided*, unless the infringement is narrowly tailored to serve a compelling state interest'" (emphasis added)). To the contrary, most cases exploring parental rights, such as the Sixth Circuit's recent decision, employ language associated with rational basis—not strict scrutiny. *See also, e.g., Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 178 (4th Cir. 1996) (collecting cases). As the Tenth Circuit observed, a plaintiff cannot "simply invoke the parental rights doctrine, combine it" with another constitutional right, "and thereby force the government to demonstrate the presence of a compelling state interest." *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 700 (10th Cir. 1998). Because the Supreme

---

[3] Plaintiffs claim *Parham* recognized a parental right to choose medical procedures such as a tonsillectomy. Doc. 118 at 21. But *Parham* involved a far different scenario than the one here: a child protesting parental authority. In the dicta quoted by Plaintiffs, the Court simply observed that children "are not able to make sound judgments concerning many decisions, including their need for medical care or treatment" and that a child's disagreement with a decision "does not automatically transfer the power to make that decision from the parents to . . . the state." 442 U.S. at 603.

7

Court has not recognized the specific right on which Plaintiffs rely, nor defined its scope, this Court should heed the warning to "exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court." *Dobbs*, 142 S. Ct. at 2247 (citation omitted).

Moreover, simply claiming a broad "parental right" is not a "talisman" sufficient to establish the challenged law implicates, let alone infringes upon, a fundamental liberty interest. *Swanson*, 135 F.3d at 699. Instead, *Glucksberg* and *Dobbs* instruct that in *all* substantive due process cases, a plaintiff must provide a "'careful description' of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721; Doc. 80 at 17-18; *see also Seegmiller v. LaVerkin City*, 528 F.3d 762, 769 (10th Cir. 2008). Broadly worded general rights as Plaintiffs often employ here are insufficient; narrowness and specificity are required. *See, e.g., Glucksberg,* 521 U.S. at 723 (analyzing a "right to commit suicide which itself includes a right to assistance in doing so" rather than a "right to die"); *Swanson*, 135 F.3d at 699-700 (analyzing "right of parents to send their children to public school on a part-time basis, and to pick and choose which courses their children will take"); *Masseth v. Jones*, No. EDCV 21-1408, 2021 WL 6752317, at *10 (C.D. Cal. Nov. 9, 2021) ("[G]eneralized assertions of a fundamental right to parental choice, or even to parental choice over their children's medical care, do[] not provide a careful description."). While Plaintiffs are free to ignore these instructions, as well as *Dobbs* and *Glucksberg*, this Court is not.

At its *broadest*, the interest at stake is a parent's purported right to secure specific "medical" regimens or procedures, even new and experimental ones, for their children. *See also* Doc. 80 at 20. Plaintiffs provide nothing in their brief to support a conclusion that such a right is deeply rooted in history and tradition. And "[n]o Supreme Court case extends [parental rights] to a general right to receive new medical or experimental drug treatments." *Skrmetti*, 2023 WL 4410576 at *4; *see also U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 599 (6th Cir. 2013) ("[M]ost federal courts have held that a patient does not have a constitutional right to obtain a particular type of treatment . . . ." (emphasis

8

added) (quoting *Mitchell v. Clayton*, 995 F.2d 772, 775 (7th Cir. 1993))); Doc. 80 at 19. The consequences of recognizing such a sweeping parental right, and especially applying strict scrutiny to the same, would be profound. The Constitution does not contain a right to abortion or physician-assisted suicide. *See* Doc. 80 at 19-20. Yet under Plaintiffs' theory, if a state chose to target those prohibitions to its most vulnerable population—minors—those laws would suddenly become suspect. The FDA frequently "determines when new drugs are safe for public use, including use by minors, and when new drugs are safe for certain purposes but not others." *Skrmetti*, 2023 WL 4410576 at *5. Even though "[t]here is no constitutional right to use a new drug that the FDA has determined is unsafe or ineffective[,]" Plaintiffs' sweeping theory would jeopardize any of these state or federal regulations applying to minors. *Id.* (citation omitted)).

Surely whatever unenumerated parental right to direct the care of children the Constitution recognizes cannot sweep any further than the action ultimately at issue. *See* Doc. 80 at 18-19. And surely recognizing such a broad parental right would be inherently incompatible with Supreme Court precedent recognizing "[t]he state's authority over children's activities *is broader* than over like actions of adults." *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944) (emphasis added); *see also Skrmetti*, 2023 WL 4410576 at *6 ("There's little reason to think that a parent's right to make decisions for a child sweeps more broadly than an adult's right to make decisions for herself."). If there is a realm in which the State should have *more* leeway and discretion to regulate, it is in the protection of its children.

V. **Plaintiffs have not plausibly alleged a Section 1557 claim.**

Plaintiffs' Section 1557 claim fails for the same reason their equal protection effort fails: prohibiting a particular medical procedure does not discriminate on the basis of sex. As described previously, Doc. 80 at 8-16, there is no treatment, drug, or surgery offered to one sex that is not available to the other. Similarly, transgender patients are not excluded from any treatment available to non-transgender patients. Because the hospital policy does not discriminate, Plaintiffs' argument that

9

discrimination on transgender status is sex discrimination, Doc. 118 at 23-24, is irrelevant.

Moreover, contra Plaintiffs' assertion, *id.* at 24-25, Title IX's provision holding that "maintaining separate living facilities for the different sexes" is not discrimination (20 U.S.C. § 1686) applies to Section 1557. Section 1557 "incorporated the legal standards that define discrimination under" Title IX. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019). Therefore, only conduct that discriminates under Title IX constitutes discrimination under Section 1557. In arguing otherwise, Plaintiffs overread *Whitman-Walker Clinic v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020). There, the court only found that the United States' attempt to confirm a Title IX religious exemption in Section 1557 was improper under the APA because the government did not "adequately consider" an issue; it declined to say that such a confirmation was *per se* illegitimate. *Id.* at 43-46.

Declining to offer a medical treatment or procedure is not tantamount to discrimination against individuals who may wish to receive the treatment. Plaintiffs' theory of Section 1557 is wrong and would have expansive ramifications. It would essentially require every medical provider that accepted federal funds to participate in gender transition treatments even if the provider believed such treatments are harmful. Nothing in Section 1557 requires this.

## VI. Plaintiffs have not alleged that Hospital Defendants violated the Constitution.

Plaintiffs claim Defendants "misread" the Complaint, in that they "do not directly challenge SB 3, but rather the Hospital Defendants' policy implementing and enforcing SB 3." Doc. 118 at 18. But Plaintiffs' Complaint challenged both. The title of their second claim for relief was "Fourteenth Amendment – Equal Protection (SB 3)." Doc. 2 at p. 53. And Paragraph 233 states that "SB 3 and the Hospital Defendants' SB 3 Policy facially discriminate . . . ." Nevertheless, this Court can now dismiss the challenge to SB 3, based on Plaintiffs' concession. And given that the Policy was just implementing SB 3, and that there are no claims of pretext or animus against the Hospital Defendants, the challenge to the Policy should be dismissed. If SB 3 stands, then so does the Policy.

Respectfully submitted,

*s/ Zach West*

GARRY M. GASKINS, II, OBA #20212
 *Solicitor General*
ZACH WEST, OBA #30768
 *Director of Special Litigation*
AUDREY WEAVER, OBA #33258
WILL FLANAGAN, OBA #35110
 *Assistant Solicitors General*
OFFICE OF ATTORNEY GENERAL
 STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:  (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Audrey.Weaver@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for Defendants 15-53*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st of July, 2023, I electronically filed the foregoing REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS 15-53 with the Clerk of Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

*s/ Zach West*
Zach West
