# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PETER POE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>GENTNER DRUMMOND, et al.,<br><br>*Defendants*. | Case No. 23-CV-00177-JFH-SH |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 80 AND 82)**

Oklahoma's governor has proclaimed that "parents should have **the right to make decisions about the health** and education **of their children**."[1] According to Defendants, however, this right does not extend to the parents of transgender adolescents with gender dysphoria, even when clinicians and the adolescents themselves agree that providing medical treatment for gender dysphoria is necessary for them.

To justify Oklahoma's decision to ban the provision of evidence-based, safe, and effective medical treatments only for the small population of transgender adolescents with gender dysphoria in Oklahoma, Defendants overstate the weight of the Sixth Circuit's outlier, non-binding order staying the preliminary injunction decision in *L.W. v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023), and misstate the relevance of *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), upon which the Sixth Circuit's decision erroneously relies.

The panel majority in *L.W.* acknowledged not only that its views were "initial," but also that they "may be wrong," particularly because "the one week [it] had to resolve th[e] motion does not suffice to see [its] own mistakes." 73 F.4th at 422. The panel issued its stay order without the benefit of a comprehensive review of the record, straying far from the meticulous preliminary injunction decisions of trial courts in Arkansas, Florida, Indiana, Kentucky, Missouri, and Tennessee, the neighboring Eighth Circuit's affirmance of a preliminary injunction, and the final judgments of courts in Arkansas and Florida following extensive trials.[2] What is more, the panel

---

[1] Governor Kevin Stitt (@GovStitt), TWITTER (Sept. 1, 2021, 11:18 AM), https://twitter.com/GovStitt/status/1433086759206785025?s=20 (emphasis added).

[2] *See Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022), *reh'g en banc denied*, 2022 WL 16957734 (8th Cir. Nov. 16, 2022); *Dekker v. Weida*, 2023 WL 4102243 (N.D. Fla. June 21, 2023) (post-trial decision); *Brandt v. Rutledge*, 2023 WL 4073727 (E.D. Ark. June 20, 2023) ("*Brandt II*") (same); *see also L.W. v. Skrmetti*, 2023 WL 4232308 (M.D. Tenn. June 28, 2023), *stayed by*, 73 F.4th 408 (6th Cir. 2023); *Doe 1 v. Thornbury*, 2023 WL 4230481 (W.D. Ky. June 28, 2023), *stayed by*, No. 3:23-cv-230, slip op. (W.D. Ky. July 14, 2023) (stayed in light of stay in *L.W.*); *K.C. v. Individual Members of the Med. Licensing Bd. Of Ind.*, 2023 WL 4054086 (S.D. Ind. June 16, 2023); *Doe v.*

1

majority's reliance on *Dobbs* was misplaced. *Dobbs* "concerns the constitutional right to abortion and **no other right**." *Dobbs*, 142 S. Ct. at 2277 (emphasis added). "Nothing in [*Dobbs*] should be understood to cast doubt on precedents that do not concern abortion." *Id.* at 2277–78.

Plaintiffs have more than plausibly alleged that SB 613 and the SB 3 Policy violate their rights under the Fourteenth Amendment's Equal Protection Clause and also violate their rights under the Fourteenth Amendment's Due Process Clause and Section 1557 of the Affordable Care Act, respectively. The Court should deny Defendants' Motions to Dismiss in their entirety.

**I.  THE SIXTH CIRCUIT'S INITIAL VIEWS DO NOT JUSTIFY DISMISSAL.**

Defendants' reliance on the Sixth Circuit's divided stay decision in *L.W.* is misplaced. Not only is that decision not binding upon this Court, it is also unpersuasive for at least five reasons.

First, the panel's decision is premised on the clearly erroneous view that "the medical and regulatory authorities are not of one mind about using hormone therapy to treat gender dysphoria" or "[e]lse, the FDA would by now have approved the use of these drugs for these purposes." *L.W.*, 73 F.4th at 416. This view dangerously misapprehends the FDA approval process and its purpose. "Off-label use of drugs is commonplace and widely accepted across the medical profession." *Dekker*, 2023 WL 4102243, at *19; *accord Brandt II*, 2023 WL 4073727, at *18. "Once a drug has been approved . . . the drug can be distributed not just for the approved use but for any other use as well. There ordinarily is little reason to incur the burden and expense of seeking additional FDA approval." *Dekker*, 2023 WL 4102243, at *19. That "the FDA has not approved these drugs for treatment of gender dysphoria says precisely nothing about whether the drugs are safe and effective

---

*Ladapo*, 2023 WL 3833848 (N.D. Fla. June 6, 2023); *Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131 (M.D. Ala. 2022); *Brandt v. Rutledge*, 551 F. Supp. 3d 882 (E.D. Ark. 2021) ("*Brandt I*"), *aff'd*, 47 F.4th 661 (8th Cir. 2022); *cf.* Order, *Southampton Cmty. Healthcare v. Bailey*, No. 23SL-CC01673 (Mo. Cir. Ct. May 1, 2023) (granting TRO against regulations restricting provision of gender-affirming medical care for transgender adolescents and adults).

2

when used for that purpose." *Id.* Nor does it say anything about the views of medical and regulatory authorities. *Id.* at *7; *Brandt I*, 551 F. Supp. 3d at 890; Compl. ¶ 198, ECF 2. In short, the off-label use of drugs to treat gender dysphoria "is not a reason to ban or refuse to cover their use for that purpose." *Dekker*, 2023 WL 4102243, at *19.

Second, the panel erred egregiously by failing to apply heightened scrutiny, inexplicably ignoring twenty-five years of Supreme Court precedent that unambiguously instructs that "all gender-based classifications today warrant heightened scrutiny." *United States v. Virginia*, 518 U.S. 515, 555 (1996) (quotation marks omitted); *see also Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017). It also failed to explain why the reasons for finding a facial classification in *Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020), were inapplicable, even though Title VII and the Equal Protection Clause both are focused on discrimination against individuals, not groups. Title VII protects "individuals," *see id.*; the Equal Protection Clause protects "persons." *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948).

Third, the panel ignored that classifications based on transgender status may be quasi-suspect, even if a particular court has not yet recognized as much. *L.W.*, 73 F.4th at 421. "[T]he lack of binding precedent does not require this Court to only apply rational basis review, nor does it prevent this Court from relying on well-reasoned opinions of non-binding courts to inform its opinion." *Ray v. McCloud*, 507 F. Supp. 3d 925, 938 (S.D. Ohio 2020).

Fourth, in discussing plaintiffs' parental autonomy claim, the stay panel disregarded controlling precedent in *Parham v. J.R.*, 442 U.S. 584 (1979), which expressly recognized that parents' fundamental rights under the Due Process Clause include "the right, coupled with the high duty . . . to recognize symptoms of illness and **to seek and follow medical advice**." *Id.* at 602 (emphasis added). That right is not limited to a "right to refuse" treatment. *L.W.*, 73 F.4th at 418.

*Parham* involved parents who affirmatively sought to have their children admitted to a hospital for mental health treatment. 442 U.S. at 601–02. This affirmative right is consistent with binding Tenth Circuit precedent that "a parent's general right to make decisions concerning the care of her child includes, to some extent, a more specific right to make decisions about the child's medical care." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197 (10th Cir. 2010). Plaintiffs have plausibly alleged that SB 613 unconstitutionally interferes with parents' "fundamental right to seek medical care for their children and, in conjunction with their adolescent child's consent and their doctor's recommendation, make a judgment that medical care is necessary." *Brandt I*, 551 F. Supp. 3d at 892; *see also, e.g.*, *Eknes-Tucker*, 603 F. Supp. 3d at 1144–46, 1151; *Thornbury*, 2023 WL 4230481, at *5–6; *Ladapo*, 2023 WL 3833848, at *11.

Fifth, discussed below, the panel's reliance on *Dobbs* is misplaced as *Dobbs* is inapposite.

## II.   *DOBBS* IS INAPPLICABLE.

*Dobbs* is inapplicable by its very terms and did not make new governing equal protection law. In passing dicta responding to arguments raised only by *amici*, the Supreme Court merely reiterated the holding in *Geduldig v. Aiello*, 417 U.S. 484 (1974), that "[t]he regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is a 'mere pretex[t] designed to effect an invidious discrimination against members of one sex or the other.'" *Dobbs*, 142 S. Ct. at 2245–46 (quoting *Geduldig*, 417 U.S. at 496 n. 20). That mere observation does not save SB 613 or the SB 3 Policy. "The *Dobbs* statement about procedures only one sex can undergo is simply inapplicable" in this case. *Dekker*, 2023 WL 4102243, at *13.

First, unlike the laws in *Geduldig* and *Dobbs*, the Ban and the Policy explicitly classify based on sex because they prohibit knowingly providing "*gender* transition procedures to any child." 63 Okla. Stat. § 2607.1(B) (emphasis added). Defendants argue that the law in *Dobbs*,

4

which was not challenged on equal protection grounds, spoke in gendered terms. ECF 127 at 2. But that argument is flawed because it misapprehends how the policies at issue in *Dobbs* and in this case operate differently. In *Geduldig* and *Dobbs*, the policies barred a particular procedure (abortion) equally for everyone; it did not matter who received it (or why). *See Dekker*, 2023 WL 4102243, at *13. By contrast, the Ban and the Policy do not prohibit particular procedures or treatments in equal measure for everyone; rather they condition treatment based upon a person's sex and prohibit the use of procedures or treatments only for some people based upon their sex assigned at birth. *See, e.g.*, 63 Okla. Stat. § 2607.1(A)-(B); Compl. ¶¶ 184–190. "[T]he minor's sex at birth determines whether or not the minor can receive certain types of medical care under the law." *Brandt*, 47 F.4th at 669; *see also Thornbury*, 2023 WL 4230481, at *4; *Dekker*, 2023 WL 4102243, at *13; *K.C.*, 2023 WL 4054086, at *8.

Second, "[t]he *Dobbs* statement … would not help the defendants … because this case involves invidious discrimination against transgender[] [people]." *Dekker*, 2023 WL 4102243, at *13. By their very terms, the Ban and the Policy target transgender minors for discriminatory treatment because their gender identity is inconsistent with their sex assigned at birth. That is the definition of being transgender. Compl. ¶ 52. Moreover, as the Complaint alleges, the Ban and the Policy were adopted as part of a wave of legislation and policymaking by Oklahoma officials to single out transgender people for disparate treatment. *See* Compl. ¶¶ 110–116. The Ban and SB 3 Policy "categorically prohibit[] transgender minors from taking transitioning medications due to their gender nonconformity," *Eknes-Tucker*, 603 F. Supp. 3d at 1147, even though "disapproving transgender status" is not a legitimate legislative purpose. *Dekker*, 2023 WL 4102243, at *14.

Put simply, the Ban and Policy "impose differential treatment based on sex and transgender status." *Id.* "*Dobbs* [is] not to the contrary." *Id.*

5

Date: August 7, 2023

/s/*Megan Lambert*
Megan Lambert
   (OBA# 33216)
**American Civil Liberties Union**
  **Foundation of Oklahoma**
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org

Chase Strangio*
Harper Seldin*
**American Civil Liberties Union**
  **Foundation**
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
cstrangio@aclu.org
hseldin@aclu.org

Laura J. Edelstein*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com

Luke C. Platzer*
Madeleine V. Findley*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
LPlatzer@jenner.com

Lauren M. Greene*
Blaine R. Valencia*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
LGreene@jenner.com
BValencia@jenner.com

\* *Admitted pro hac vice.*

Respectfully submitted

Omar Gonzalez-Pagan*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Shelly L. Skeen*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
Oak Lawn Ave, Ste. 500
Dallas, TX 75219
(214) 219-8585
sskeen@lambdalegal.org

Sasha Buchert*
**Lambda Legal Defense**
  **and Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC 20006
(202) 804-6245
sbuchert@lambdalegal.org

Remi Jaffre*
**Jenner & Block LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
RJaffre@jenner.com

Lillian M. McGuire*
Jocelyn Sitton*
Daniel L. Robertson*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
LMcGuire@jenner.com
JSitton@jenner.com
DRobertson@jenner.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2023, I electronically filed the foregoing Plaintiffs' Surreply in Opposition to Defendants' Motions to Dismiss (ECF. Nos. 80 and 82) with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

Respectfully submitted,

*/s/ Megan Lambert*
Megan Lambert
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
mlambert@acluok.org

*Counsel for Plaintiffs*